JOHN L. MACAULEY AND ANDREW J. MACAULEY, RESPONDENTS, *v.* GUSTAVUS C. HOPKINS AND OTHERS, APPELLANTS.

*Pledge of personal property to secure a loan — when a delivery thereof, made after the making of the loan, will make it valid as against the pledgor's creditors — when the possession of the pledgor will be deemed that of the pledgee.*

APPEAL from a judgment in favor of the plaintiffs, entered on the report of a referee.

This action was brought by the respondents above named and the sheriff of the city and county of New York to recover the proceeds of certain bales of cotton alleged to have been shipped to the appellants, who were cotton brokers in the city of New York, by one William Stringfellow, to be sold in the market on his account, and which it was claimed had been attached under an attachment issued in an action brought by the above named respondents Macauley & Co. against said Stringfellow, and in which judgment was subse-

quently recovered. The case depended and was decided by the learned referee upon questions relating to the title to the cotton, and the rights of the creditors of William Stringfellow therein at the time the attachment was levied.

It was claimed on the part of the defense that a portion of the cotton so attached was the joint property of William Stringfellow and his brother John J. Stringfellow, it having been bought by moneys advanced by John J. to William for that purpose, and under an agreement that the cotton should be bought for their joint account.

The court, after reviewing the evidence and holding that the referee should have found that the cotton was owned jointly by William and John Stringfellow, and that for that reason a new trial should be had, further said : " An extremely interesting question also arises in the case growing out of the defendants' claim that the National Bank of Chester, S. C., was entitled to the proceeds of the cotton attached. The cotton was purchased by William String-fellow at Chester, S. C., with moneys advanced by the bank. After the same was purchased it was deposited in a warehouse kept by William Stringfellow. He gave to the bank notes which, after reciting the amount of money borrowed, contained a clause to the following effect : ' Having deposited with them as collateral secu-rity certificate of warehouse receipts for thirty-two bales of cotton marked W, and insured at Chester, and county bonds for any defi-ciency, which receipt and cotton I hereby authorize them to sell without notice at public or private sale at their option ; in case of the non-performance of this promise applying the net proceeds to the payment of this note, including interest, and accounting to me for surplus, if any. In case of deficiency I promise to pay to them the amount thereof forthwith after such sale, with interest upon the amount unpaid, at the rate above specified.'

" The receipts referred to in the notes were in the following form :

" ' I hereby certify that I have in my warehouse, rented from J. C. Hardin, sixty-two bales of cotton, marked J. J. S., and which cotton I hereby pledge to the National Bank of Chester, S. C., as collateral security to my note for $1,502.30 payable one day after date, and dated this day, and executed by me to said bank ; and also deposits and assigns to said bank the insurance policy on said cotton.

' WM. STRINGFELLOW.'

" There was evidence tending to show that the cotton mentioned in the receipts was identified and set apart in some instances as it appeared in the warehouse; but the control of the warehouse remained all the while in William Stringfellow. In respect to the bales of cotton shipped to the appellants and attached in August, 1881, the following agreement was made between the bank and Stringfellow:

" 'This witnesseth, that it is agreed between myself and the National Bank of Chester, S. C., that the cotton now in my warehouse (rented from J. C. Hardin), may be removed by me and shipped to Messrs. Hopkins, Dwight & Co. of New York city, to be by them sold, and the proceeds to be applied in payment of my notes and interest now due to said bank for money advanced by it, to purchase the cotton and to refund which advancements and pay said notes and interest the cotton so to be removed and shipped is specifically pledged. Cotton marked J. J. S. and S., 125 bales in all.'

" Under this agreement Stringfellow sent forward the cotton which was attached in the hands of the appellants. So far as the receipts executed by Stringfellow to the bank go it will be seen that the property was distinctly " pledged " to the bank under circumstances which would undoubtedly have justified the bank in taking possession as between itself and Stringfellow, but as between the bank and the creditors of Stringfellow or *bona fide* purchasers from him, the written pledge being unaccompanied by possession, could not be sustained. But when it was agreed between the bank and Stringfellow that the property should be shipped to the defendants to be by them sold, and the proceeds applied to the payment of the demand for which it stood specifically pledged by the written instrument referred to, and it in fact was sent forward and reached the defendants' possession for that purpose, the question whether that transaction was not in law equivalent to a delivery of possession to the bank under the pledge, so that the attachment of the plaintiffs could not cut off the rights of the bank, is a more serious question. Stringfellow, in the transaction, after sending forward the property to be sold to the brokers named in the agreement for the specific purpose of converting the same into money for the use of the bank, might well be regarded as the agent of the bank, and the selling in his name by the brokers would not of necessity preju-

dice the rights of the bank as pledgees in possession. The possession of Stringfellow after shipping the cotton while in course of transportation might well be held to be that of an agent for a special and limited purpose. In *Parshall* v. *Eggert* (54 N. Y., 18), it was held in a somewhat analogous case, that a delivery to the pledgee at any time subsequent to the pledge before the rights of creditors had attached, consummated a valid lien as against said creditors. In this case the delivery to the defendants as brokers, made by Stringfellow pursuant to a written agreement that the same should be so delivered for the purpose of consummating the pledge and entitling the bank to receive the proceeds of the sale, goes far as it seems to us to place the pledge in a position where the law will hold that the rights of the bank are superior to those of subsequently attaching creditors. Nor upon this question does it seem important that the defendants as brokers were not advised at the time of the delivery of the rights of the bank. The only effect the failure to give them such information would have, would be to protect them in their subsequent dealings, if any, with Stringfellow. But the bank could at any moment by giving notice of its rights as pledgee, and of the contract under which the cotton was sent forward for its benefit, cut off the rights of the brokers to pay over the net proceeds to any one but the bank. The attaching creditors are not *bona fide* purchasers in any sense. They have advanced nothing upon the credit of the cotton. They stand upon strict legal rights which they must show to have been superior to the rights and equities of the bank. They fail to do this when it appears that before any of their rights accrued by reason of the attachment, the lien of the bank had ripened into a valid one by the agreement which made the possession of the defendant 'its possession.'

"But it is not necessary definitely to determine this question because in the view we have taken of the one first considered there must be a new trial of the case in which the facts may assume a different aspect."

*Freling H. Smith*, for the appellants.

*L. Laflin Kellogg*, for the respondents.

Opinion by DAVIS, P. J., BRADY and DANIELS, JJ., concurred.

Judgment reversed, new trial ordered, costs to abide event.